```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
DRAMEL ELLIOT,

                Plaintiff,                     MEMORANDUM AND ORDER

        - against -                              20 Civ. 702 (NRB)

THE CITY OF NEW YORK; POLICE OFFICER
ANTHONY JONES, Shield No. 17923;
POLICE SERGEANT JOSEPH CASTALDO, Shield
No. 358; JOHN DOE DETECTIVE; JOHN DOES;
and RICHARD ROES,

                Defendants.
----------------------------------------X
```
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Dramel Elliot is suing the City of New York ("City") and several New York City Police Department ("NYPD") officers under 42 U.S.C. § 1983 alleging false arrest. As such, pursuant to this District's Local Rule 83.10, the pretrial phase of this case is conducted under a comprehensive case management plan commonly referred to as the "1983 Plan." S.D.N.Y. Local Rule 83.10. Local Rule 83.10 implements a uniform protective order ("Protective Order") in each 1983 Plan case that permits parties to designate certain categories of documents as confidential. Id. Ex. D. One category of documents that the Protective Order treats as confidential is NYPD personnel and disciplinary records. Protective Order § 2(a). Consistent with that provision of the Protective Order, defendants designated as confidential certain

NYPD disciplinary records containing information that is not publicly available.

Relying entirely on New York's recent repeal of New York Civil Rights Law Section 50-a, a law that shielded from public disclosure personnel and performance records of police officers, firefighters, and correction officers, Elliot moves to strike defendants' designations of these records as confidential.  (ECF No. 22.)

Elliot's motion is denied for several fundamental reasons.  To begin, the 1983 Plan, and specifically the confidentiality provisions included in its Protective Order, neither reference nor was predicated on Section 50-a.  Instead, after seeking public input, the judges of this District determined that good cause exists for treating NYPD personnel and disciplinary records produced in 1983 Plan cases as confidential.  This is wholly consistent with the foundational principle that cases brought in federal court and grounded in federal law are governed by federal rules of procedure, evidence, and privilege.  Because the text of the Protective Order plainly allows defendants to mark the NYPD disciplinary records at issue here as confidential and because New York's repeal of Section 50-a has no effect on the scope and applicability of that Order, Elliot's motion is meritless. Moreover, Elliot fails to identify any persuasive policy reason why the carefully structured 1983 Plan, which presents no obstacle

to obtaining public NYPD records through New York's Freedom of Information Law ("FOIL"), should be upended in light of Section 50-a's repeal.

Before explaining the application of these principles to Elliot's motion in more detail, some background is necessary.

## BACKGROUND

### A. The 1983 Plan

In 2010, a working group of judges in this District, lawyers from the New York City Law Department, and attorneys who regularly litigate Section 1983 cases on behalf of plaintiffs began to develop a protocol to efficiently manage and to "reduce the time to disposition in the typical § 1983 cases brought against the NYPD and its officers." See S.D.N.Y. Pilot § 1983 Plan White Paper (2013), https://www.nysd.uscourts.gov/sites/default/files/pdf/Section%201983%20Plan%20White%20Paper.pdf ("1983 Plan White Paper"). These working group meetings culminated in 2011 with the District's announcement of a set of rules and procedures known as the 1983 Plan, which began as a pilot project. After a successful trial period and an opportunity for interested parties to comment, the Board of Judges of this District adopted the Plan into its Local Rules in 2013. S.D.N.Y. Local Rule 83.10.

The 1983 Plan applies to all cases in this District "filed by a represented plaintiff against the City of New York ('City') and/or the New York City Police Department ('NYPD') or its

employees alleging the use of excessive force, false arrest, or malicious prosecution by employees of the NYPD in violation of 42 U.S.C. § 1983." Id.  One of its core goals is to encourage a fast and efficient discovery process.

To that end, Section 5 of the 1983 Plan requires that the parties exchange at the beginning of discovery several types of documents that the working group "considered most helpful for an early disposition."  Id. § 5; 1983 Plan White Paper.  From defendants, this includes particular NYPD Civilian Complaint Review Board ("CCRB") records,[1] NYPD Internal Affairs Bureau records, and NYPD Central Personnel Index ("CPI") records[2] relating to the incident underlying the lawsuit or to "complaints or incidents" involving the same officers "that are similar to the incident alleged in the complaint or that raise questions about the defendant's credibility."  S.D.N.Y. Local Rule 83.10 § 5.a. Also, the Plan directs plaintiffs to produce certain medical records, photographs, and videos in their possession.  Id. § 5.b.

---

[1] The CCRB "receive[s], investigate[s], hear[s], make[s] findings and recommend[s] action upon complaints by members of the public against members of the police department that allege misconduct involving excessive use of force, abuse of authority, discourtesy, or use of offensive language." N.Y.C. Charter § 440(c)(1).  The CCRB creates records of these investigations and presents its findings and recommendations to the NYPD Commissioner.  Id.

[2] CPI records "describe[] allegations, disciplinary events, and background checks performed on the subject officer throughout his career." Michael F. Armstrong et al., Commission to Combat Police Corruption: A Follow-Up Review of the New York City Police Department's Performance Monitoring Unit 5 n.9 (2006).

Consistent with the 1983 Plan's goal of expedition, Local Rule 83.10 also deems that a uniform Protective Order shall automatically apply in each case governed by the Plan. Id. § 11. That Protective Order provides that there is good cause under Fed. R. Civ. P. 26(c) for the parties to treat the following four categories of discovery materials as confidential:

> "Confidential Materials" shall mean
>
> (a) New York City Police Department ("NYPD") personnel and disciplinary-related records, and records of investigations regarding the conduct of Members of the Service of the NYPD conducted by the NYPD, the Civilian Complaint Review Board, or other agencies,
>
> (b) plaintiff's medical records,
>
> (c) a list from the New York City Police Department that identifies plaintiff's prior arrests by date of arrest, charge(s) and disposition, including all sealed arrests, and
>
> (d) other documents and information that may in good faith, during the pendency of this litigation, be designated "Confidential Material" by the parties or the Court, except that such documents and information shall not be designated "Confidential Materials" to the extent that they relate to the incident(s) underlying the Complaint in the action, are obtained by the parties by subpoena or pursuant to the New York Freedom of Information Law ("FOIL"), or are otherwise publicly available.

Protective Order § 2. Materials the parties designate as confidential may not be used "other than [for] the evaluation, preparation, presentation or settlement of claims or defenses in

the Action."  Id. § 4.  Accordingly, parties may disclose those materials to "prepar[e] or present[ their] claims or defenses in the Action" or to inform an "expert or consultant who has been retained or specially employed by a party's attorneys in anticipation of litigation or preparation for trial of the Action." Id. § 5 (listing other permissible reasons to disclose confidential materials).

Section 7 of the Protective Order, in turn, allows parties to challenge whether a document was improperly designated as confidential and move "the Court to remove the designation."  Id. § 7.

### B.  New York's Repeal of Section 50-a

In June of this year, New York repealed New York Civil Rights Law Section 50-a.  That law had shielded from public disclosure records "used to evaluate performance toward continued employment or promotion" of police officers, firefighters, and correction officers, unless that individual consented to their release or a court ordered their disclosure.  N.Y. Civ. Rights Law § 50-a(1) (McKinney) (repealed 2020).  As interpreted by the New York Court of Appeals, this statutory right of privacy extended to records of complaints and disciplinary actions.  See New York Civil Liberties Union v. New York City Police Dep't, 118 N.E.3d 847, 851–54 (N.Y. 2018).  Following repeal, the public can now obtain information

previously covered by Section 50-a through FOIL, subject to that statute's limitations.  2020 N.Y. Laws 96.

### C. Counsel for Section 1983 Plaintiffs Request an Amendment to Local Rule 83.10

In the wake of New York's repeal of Section 50-a, a group of plaintiffs' attorneys, including Elliot's counsel, wrote to me in my capacity as Chair of this District's Rules Committee and Chief Judge McMahon requesting that the District amend Local Rule 83.10 to strike Section 2(a) of the Protective Order.  (ECF No. 22-1 at July 13, 2020 Ltr. from W. Stecklow et al.)  The City opposed the proposed amendment, noting that it would subject to public disclosure information made available in 1983 Plan cases that was not available under FOIL.  (Id. at July 15, 2020 Ltr. from G. Pestana at 2 & n.1 (noting, as examples, that there is a disparity between the information that may be withheld or redacted under FOIL and produced in federal discovery, and that FOIL does not mandate that all disciplinary records be made public, such as reports of "technical infractions").)

After considering plaintiffs' counsel's proposal, Judge McMahon and I determined that there was no need to amend the Protective Order as written and suggested that to the extent any issues arise in individual cases they should be resolved by application of federal law.  (Id. at Aug. 6, 2020 Ltr. from Hon. Naomi Reice Buchwald.)

**D.   The History of This Litigation and the Records at Issue**

Elliot filed this lawsuit in January of this year, electing to litigate his case in this District and under its Local Rules, including the 1983 Plan.  This motion is not, however, Elliot's first effort to avoid operation of the 1983 Plan.  In July, Elliot requested that the Court remove his case entirely from the 1983 Plan even before defendants produced documents under the Plan.  (ECF No. 19.)  The Court denied that request.  (ECF No. 21.)

Defendants then produced to Elliot CCRB and CPI records that describe complaints or incidents involving the named NYPD officer defendants ("NYPD Disciplinary Records"), as required by Section 5 of the 1983 Plan.  (See ECF No. 23 at 1.)  Defendants marked those records as confidential under Protective Order Section 2.  (Id. at 1–2.)  And, as defendants note, it "is undisputed that CPI indices of NYPD officers are not contained in any public database and are not otherwise publicly available," and that the "CCRB histories that were produced to plaintiff in this matter are not otherwise public[ly] available."  (Id. at 3.)  Elliot has not contested these assertions, and thus the Court accepts defendants' representations as true.

Following defendants' production, Elliot again asked the Court to remove his case from the 1983 Plan, and the Court again denied his request.  (ECF Nos. 22, 24.)  Elliot now moves under Section 7 of the Protective Order to remove defendants'

confidentiality designations from the non-public NYPD Disciplinary Records based on New York's repeal of Section 50-a.  (ECF No. 22.)[3]

## DISCUSSION

### I.   The Language of the Protective Order

Interpretation of the Protective Order, like other court rules and orders, begins with examining its plain language. Giuffre v. Dershowitz, No. 15 Civ. 7433, 2020 WL 3578104, at *2 (S.D.N.Y. July 1, 2020) (citation omitted); Robles v. City of New York, No. 19 Civ. 6581, 2020 WL 1494166, at *4 (S.D.N.Y. Mar. 27, 2020) (citations omitted).  When the issue can be resolved by application of the order's plain language, the inquiry ends there. See Geller v. Branic Int'l Realty Corp., 212 F.3d 734, 738 (2d Cir. 2000) ("[T]he [o]rder must be interpreted as it[s] plain language dictates.") (citation omitted).

There is no real dispute over whether the text of the Protective Order permits defendants to designate the NYPD Disciplinary Records as confidential.  Section 2 of the Protective Order defines the scope of materials that the parties may designate as confidential.  It is divided into four subsections, each dealing with a distinct category of information.  Subsection (a), which protects NYPD "personnel and disciplinary-related records, and records of investigations regarding the conduct of [NYPD officers]

---

[3] While not an issue raised in his current motion, Elliot also previews that he will likely challenge the redactions defendants made to the NYPD Disciplinary Records.  (ECF No. 22 at 3 n.4.)

- 9 -

conducted by the NYPD, the Civilian Complaint Review Board, or other agencies," plainly covers the NYPD Disciplinary Records at issue.  Protective Order § 2(a).[4]  It was therefore appropriate for defendants to designate the NYPD Disciplinary Records as confidential under the terms of the Protective Order.

## II. The Effect of New York's Repeal of Rule 50-a

Having established that defendants properly designated the NYPD Disciplinary Records as confidential under the Protective Order, the Court now turns to the crux of the parties' dispute: whether New York's decision to repeal Section 50-a nullifies the Protective Order's confidentiality provisions.

---

[4]  It is worth briefly exploring the operation of Subsection (d), which is a catchall provision that covers "other documents and information that may in good faith, during the pendency of this litigation, be designated 'Confidential Material' by the parties or the Court." Protective Order § 2(d). "[E]xcept," Subsection (d) continues, "such documents and information shall not be designated 'Confidential Materials' to the extent that they relate to the incident(s) underlying the Complaint in the action, are obtained by the parties by [FOIL], or are otherwise publicly available." Id.  Under the last-antecedent canon of construction, the "except" clause only applies to the materials described in Subsection (d), as the clause both immediately follows and, for good measure, mirrors Subsection (d)'s "other documents and information" language. See Barnhart v. Thomas, 540 U.S. 20, 26 (2003) (Under "the grammatical 'rule of the last antecedent,' . . . a limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows[.]").  Subsection (d)'s exception thus does not apply to the records enumerated in Subsections (a) through (c), including the NYPD Disciplinary Records at issue here.  In interpreting the same provision earlier this year, Magistrate Judge Moses reached the same conclusion and reasoned that a broader reading would create an exception that swallows the rule by "render[ing] non-confidential many of the same documents expressly granted confidentiality in subsections (a), (b), and (c)." Robles, 2020 WL 1494166, at *4.

**A.   Elliot's Motion is an Improper Attempt to Amend a Local Rule**

As a threshold matter, Elliot casts his motion as a challenge under Section 7 of the Protective Order to defendants' confidentiality designations under the Order as written and not an attempt to amend the Order altogether. (See ECF No. 22 at 1, 3-4.)  As he does not identify any exceptional circumstances about his case as grounds to remove the confidentiality designations, the true nature of Elliot's challenge is far broader than he suggests.  What Elliot actually seeks is to fundamentally rewrite an aspect of the 1983 Plan that is enshrined in a Local Rule adopted by the Board of Judges of this District and approved by the Judicial Council of the Second Circuit after carefully assessing its merits.[5]

Elliot, as an individual litigant who willingly submitted himself to this District's Local Rules, may not seek to amend those Rules under the guise of a discovery motion.  The proper vehicle to do so would be a petition to the Court.  As noted earlier, such a petition (in which Elliot's counsel joined) was made and

---

[5] While the ultimate decision in any individual case "to lift or modify a protective order is . . . committed to the sound discretion of the trial court," In re Agent Orange Prod. Liab. Litig., 821 F.2d 139, 147 (2d Cir. 1987) (citation omitted), the Protective Order here is part and parcel of a carefully structured Local Rule and thus the Court will not disturb that Order other than to consider special circumstances in a particular case.  As Elliot has not identified any such circumstances in his case, the Court declines to set a precedent that would result in a de facto amendment of the Protective Order as written under the Local Rules.

rejected.  Moreover, Elliot's motion is particularly inappropriate considering that he could have avoided the 1983 Plan altogether simply by filing his lawsuit in New York state court and, indeed, presumably can still do so by dismissing this case and refiling. See Haywood v. Drown, 556 U.S. 729, 735 (2009) (citations omitted).

**B.  The Effect of Section 50-a's Repeal on the Federal Protective Order**

Leaving aside these procedural issues, Elliot's legal argument is that despite the clear language of the Protective Order, New York's repeal of Section 50-a strips defendants of their right to designate the NYPD Disciplinary Records as confidential because this state law had been "the only reason why law enforcement disciplinary records had ever been treated as confidential in this court" and "the only possible basis for the confidentiality of law enforcement disciplinary records." (ECF No. 22 at 2-3.)  Not only is the premise of Elliot's argument historically and factually incorrect, it also misapprehends the law applicable to Section 1983 cases brought in federal court.

To start, the 1983 Plan Protective Order stands on its own. It was never linked to the scope or existence of Section 50-a.  It never referenced, incorporated, or otherwise adopted Section 50-a. Instead, after obtaining the views of the bar, it was the considered judgment of the judges of this District in adopting Local Rule 83.10 that good cause exists independent of Section

50-a for the provisions of the Protective Order, including the specific treatment of NYPD personnel and disciplinary records as confidential.  Protective Order at 1, § 2(a).

Moreover, and equally important, in Section 1983 cases, like all cases arising under this Court's federal question subject matter jurisdiction, it is federal law—not state law—that controls issues of discoverability, privileges, and confidentiality.  Crosby v. City of New York, 269 F.R.D. 267, 274 (S.D.N.Y. 2010) (citations omitted).  As such, Section 50-a never "govern[ed] discovery in federal cases" nor "b[ound] federal courts considering actions brought pursuant to federal civil rights laws like § 1983."  Moore v. City of New York, No. 11 Civ. 5083, 2012 WL 2190551, at *2 (S.D.N.Y. June 15, 2012) (citations omitted).

In short, New York's repeal of Section 50-a simply has no bearing on this discovery issue in a federal case based on federal law and governed by a valid court order.  It does not restrict the applicability of the Protective Order's confidentiality provisions or exempt the NYPD Disciplinary Records from the Order's reach.[6]  Accordingly, Elliot's motion has no legal or factual foundation.

---

[6] Elliot directs the Court's attention to a recent order issued by the U.S. District Court for the Western District of New York concluding that certain police records that are publicly available could not be designated confidential. (ECF No. 25 (citing Order, Casaccia v. City of Rochester, No. 17 Civ. 6323 (W.D.N.Y. July 7, 2020), ECF No. 85).)  The Western District of New York has no 1983 Plan equivalent.  Instead, Casaccia featured a blanket provision in a stipulated protective order that permitted the parties to mark documents as confidential if they were not publicly available. (See Stipulated

### C. Elliot's Policy Arguments

As there is no procedural, legal, or factual basis to grant Elliot the relief he seeks, the Court's analysis can stop there. It is, however, worthwhile to briefly explore the policy points that Elliot raises for changing the Protective Order. As further examination reveals, Elliot greatly exaggerates the consequences of enforcing the 1983 Plan as written.

First, Elliot asserts that allowing defendants to designate NYPD disciplinary and personnel records as confidential under the Protective Order "is contrary to the legislature's purpose in repealing § 50-a." (ECF No. 22 at 3.) The stated purpose given by the New York legislature for repealing Section 50-a was that the law rendered "records of complaints or findings of law enforcement misconduct that have not resulted in criminal charges against an officer . . . almost entirely inaccessible to the public," which "undermined" "FOIL's public policy goals." N.Y. State Senate Bill S8496 at Justification (June 6, 2020).

As an initial matter, the Protective Order does not automatically apply in all Section 1983 cases involving the NYPD, as any plaintiff who wishes to avoid the 1983 Plan altogether has

---

Protective Order §§ 2, 5, id., ECF No. 77-3; see Order Granting Pl.'s Mot. for a Protective Order, id., ECF No. 82.) Casaccia's determination that public records formerly covered by Section 50-a were no longer confidential under the terms of its stipulated protective order has no relevance to this case involving NYPD Disciplinary Records marked as confidential under the 1983 Plan's Protective Order that specifically provides that there is good cause to treat such records as confidential. Protective Order at 1, § 2(a).

a ready solution: file his or her lawsuit in New York State court, which also has jurisdiction over Section 1983 cases. See Haywood, 556 U.S. at 735 (citations omitted).  And, even in cases governed by the 1983 Plan, the Protective Order by its own terms does not impede anyone from obtaining records under FOIL:  "Nothing in this Protective Order shall be construed . . . to limit use of Confidential Materials or their contents to the extent that they are publicly available or have been provided to a party through other lawful means, such as a FOIL request."  Protective Order § 9.  Thus, notwithstanding the Protective Order, anyone——including Elliot and his counsel——can use FOIL to request materials that are now publicly available because of Section 50-a's repeal and then disseminate the public versions of those records as they please.

Second, Elliot contends that he should be allowed to disclose the NYPD Disciplinary Records he obtains in civil discovery because "criminal defense attorneys need to be able to access the disciplinary records in the possession of civil rights attorneys . . . that can help their clients to fight the charges against them."  (ECF No. 22 at 3.)

Neither Elliot nor his counsel has any standing to raise issues on behalf of a criminal defendant in another jurisdiction. The parties and the forum in which to resolve those issues are obvious.  In any event, nothing in the 1983 Plan impinges in any

- 15 -

way on a state criminal defendant's ability to exercise his right to subpoena documents or to use FOIL.[7]  Nor does the 1983 Plan affect the prosecution's obligation to comply with Brady v. Maryland, 373 U.S. 83 (1963), and other disclosure requirements.

Finally, it must be noted that the practical consequences of Elliot's preferred approach would undermine the core purpose of the 1983 Plan to quickly resolve cases.  The information now available under FOIL following the repeal of Section 50-a and the NYPD disciplinary and personnel records covered by Protective Order Section 2(a) are not coterminous.  FOIL contains a number of statutory exemptions that protect from disclosure certain categories of information, see, e.g., N.Y. Pub. Off. Law § 87.2., but do not apply to discovery materials produced under the 1983 Plan.  That portions of some documents marked as confidential in 1983 Plan cases may also be publicly available is not reason enough to graft onto the 1983 Plan a process under which the City must painstakingly determine what is or is not disclosable in each document under FOIL before applying confidentiality designations

---

[7]  Elliot's policy argument appears to read into FOIL a need-based requirement for records available under its provisions that does not exist.  It is well-established that "access to government records [under FOIL] does not depend on the purpose for which the records are sought," and "insofar as [New York] Criminal Procedure Law does not specifically preclude defendants from seeking these documents under FOIL, we cannot read such a categorical limitation into the statute." Gould v. New York City Police Dep't, 89 N.Y.2d 267, 274 (N.Y. 1996) (citations omitted).  Moreover, the Court will not endorse any attempts by Elliot to transform discovery under the 1983 Plan into a supplement for FOIL disclosure or criminal case disclosure regimes by permitting 1983 Plan plaintiffs to share information they obtain in discovery that is not publicly available under FOIL or discoverable in criminal cases.

and producing them to plaintiffs.[8]  To do so would subvert the Protective Order's role in expediting the resolution of 1983 Plan cases, consistent with Fed. R. Civ. P. 1.  If Elliot wishes to share the material he receives in discovery apart from the prosecution of his case, the ready solution is for him to obtain the documents under FOIL and then distribute those public versions.

## CONCLUSION

At bottom, Elliot argues that New York's decision to repeal Section 50-a overrides the Protective Order established under this District's Local Rules and allows him to share confidential materials he receives in discovery.  His motion impermissibly seeks to amend a Local Rule, fails to present a legally or factually sound basis for setting aside the plain language of the Protective Order, and offers no persuasive policy reasons to upset the carefully structured 1983 Plan.  Any one of those deficiencies is sufficient to deny his motion.  Together, they dictate its denial.

---

[8]  Indeed, the NYPD Disciplinary Records at issue here contain information that is not publicly available. (See ECF No. 23 at 3.)  To the extent that the NYPD Disciplinary Records contain public information, defendants state that Elliot is "free to use . . . [that information] in any manner he wishes without being limited by the Local [Rule] 83.10 Protective Order." (Id. at 3 n.2; see Protective Order § 9.)

The Clerk of Court is respectfully directed to terminate the motion pending at ECF No. 22.

**SO ORDERED.**

Dated:  New York, New York
        November 18, 2020

_____
NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

- 18 -